E-FILED
Thursday, 18 September, 2025  12:15:48 PM
Clerk, U.S. District Court, ILCD

1

FILED

SEP 18 2025

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

AIMEE LYNN ALBRECHT,
    Petitioner,
v.
SHERIFF OF ROCK ISLAND COUNTY, ILLINOIS,
    Respondent.

Case No. _____ 25-cv-4165

---

**PETITION FOR WRIT OF HABEAS CORPUS**

28 U.S.C. §§ 2241 AND 2254 (ALTERNATIVE PLEADING)

## I. PARTIES AND CUSTODY

A. Petitioner Aimee Lynn Albrecht is a resident of Warren County, Illinois. She is restrained by a civil plenary order of protection entered September 21, 2022 in Rock Island County case 20-OP-250, which the state court treated together with guardianship case 16-P-313. The order states it remains in force "**to December 31, 2099 at 10:00 a.m.**"

B. The order imposes arrest-backed restraints (no-contact and location bans) enforced through 720 ILCS 5/12-3.4. These ongoing, criminally enforceable conditions non-trivially limit physical liberty and constitute "custody" under 28 U.S.C. §§ 2241(c)(3) and 2254(a).

C. The proper respondent is the Sheriff of Rock Island County in his official capacity.

## II. JURISDICTION AND VENUE

A. Jurisdiction lies under 28 U.S.C. §§ 2241, 2254, and 1331; procedure appears in 28 U.S.C. § 2243. Venue is proper under 28 U.S.C. § 2241(d).

B. Habeas safeguards liberty and must be administered with the initiative and flexibility required to surface and correct miscarriages of justice. See Jones v. Cunningham, 371 U.S. 236; Hensley v. Municipal Court, 411 U.S. 345; Harris v. Nelson, 394 U.S. 286; Carafas v. LaVallee, 391 U.S. 234; Ex parte Hull, 312 U.S. 546.

## III. EXHAUSTION AND EXCEPTIONS

A. Petitioner pursued state remedies including post-judgment motions, appeals, and an Illinois Supreme Court Rule 383 supervisory petition (No. 131821), which was handled off the public docket and dismissed without transparent, reasoned review.

B. To the extent any claim is deemed unexhausted, exhaustion is excused because state corrective process is unavailable or ineffective in these circumstances. 28 U.S.C. § 2254(b)(1)(B)(i)–(ii). Any asserted default is excused by attorney abandonment and state-created impediments. See Maples v. Thomas, 565 U.S. 266, 281–89.

## IV. CHRONOLOGY OF KEY EVENTS

A. 2016 — Guardianship matter 16-P-313 begins, no notices to parties.
B. April 1, 2020 — Linda Jones initiates 20-OP-250.

C. September 25, 2020 — Written order reflects Petitioner did not receive notice at inception; Petitioner's address was "unknown," and her presence was waived.

D. March 22, 2022 — Court, after treating the OP with the guardianship, imposes a suspended custodial term premised on an anonymous call. The court itself noted the conduct would historically constitute criminal contempt requiring separate process and appointed counsel.

E. September 21, 2022 — Plenary OP entered "to December 31, 2099 at 10:00 a.m." with blanks and inconsistencies on the face sheet and the notation "Respondent to be served." The prior OP did not expire until September 26, 2022. Personal service occurred September 29, 2022.

F. January 23–24, 2025 — Petitioner files a transcript objection with Attorney Neppl; next day an order declares the transcript "admitted and accurate," initialed "as to form" by opposing counsel and concealed by then-counsel Neppl.

G. April 21–22, 2025 — Then-counsel causes a false police report; Petitioner's sworn materials refute it.

## V. GROUNDS FOR RELIEF

### A. Statutory Noncompliance and Ultra Vires Disposition

1. Initial plenary OPs are capped at two years. 750 ILCS 60/220(b). Extensions require a noticed motion, adjudication, and compliance with § 214(c). When granted "upon good cause shown," an extension may continue "until the order

of protection is vacated or modified." 750 ILCS 60/220(e).

2. The September 21, 2022 paper identifies no noticed motion to extend, contains no § 214(c) findings "in an official record or in writing" that the court considered the required factors, and instead selects a distant fixed date—"to December 31, 2099 at 10:00 a.m."—departing from § 220(e)'s vacate/modify framework and the Act's finding requirements. The disposition is ultra vires and void for noncompliance with §§ 214(c) and 220(e) and Rule 272's written-order clarity requirement.

## B. Procedural Due Process: Service, Overlap, and Judgment Clarity

1. Criminal enforcement of an OP requires service or actual knowledge. 750 ILCS 60/223(d). The clerk must immediately enter and issue the order and provide a file-stamped copy. 750 ILCS 60/222. Here, the order entered September 21, 2022 was not personally served until September 29, 2022.

2. The prior OP remained in effect until September 26, 2022, yet the court enforced a new, unserved order starting September 21. Due process requires notice reasonably calculated to apprise interested parties and meaningful opportunity to be heard before arrest-backed restraints take hold. See Mullane v. Central Hanover Bank, 339 U.S. 306; Grayned v. City of Rockford,

408 U.S. 104 (orders must be clear and definite).

3. When a written order is contemplated, judgment is entered upon filing the signed writing; oral remarks cannot cure missing written findings or defective service. Ill. S. Ct. R. 272.

## C. Contempt Was Criminal in Substance; Safeguards Omitted; No Competent Proof

1. On March 22, 2022 the court imposed a suspended jail term for completed conduct with no purge provision. That is criminal contempt in substance, which requires written criminal-contempt charges, notice that the proceeding is criminal, counsel, confrontation, and proof beyond a reasonable doubt. See Hicks v. Feiock, 485 U.S. 624, 632–36; In re Winship, 397 U.S. 358, 364; In re Marriage of Betts, 190 Ill. App. 3d 961; In re Marriage of Logston, 103 Ill. 2d 266.

2. No competent evidence identified Petitioner as the caller. The sanction is void and cannot support continuing restraints or collateral consequences.

## D. Fraud Upon the Court

The January 24, 2025 "admitted and accurate" transcript order entered the day after

Petitioner's objection in writing to Attorney Neppl, initialed "as to form" by opposing counsel and concealed by then-counsel, together with the retaliatory false police report, constitutes egregious officer-of-the-court misconduct that corrupted the process. Relief is warranted under the court's inherent authority and Rule 60(d)(3) principles recognized in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, and Seventh Circuit authority.

### E. State Remedies Ineffective or Unavailable

The Illinois Supreme Court's off-docket handling and dismissal of Rule 383 No. 131821 demonstrates the absence of an effective corrective process, satisfying 28 U.S.C. § 2254(b)(1)(B)(i)–(ii).

### F. Custody

The arrest-backed OP imposes a non-negligible restraint on physical liberty and therefore satisfies habeas "custody." See Jones v. Cunningham, 371 U.S. 236, 242–43 (1963) (parole = custody); Hensley v. Municipal Court, 411 U.S. 345, 351–53 (1973) (arrest-backed release = custody)

## VI. NOTICE OF CONFLICT REQUEST FOR REASSIGNMENT

Petitioner respectfully gives notice that the State Chief Judge for Rock Island County, Judge Clarence M. Darrow, is the spouse of the Honorable Sara L. Darrow, Chief Judge of this Court. Because this habeas challenges arrest-backed restraints issued out of Rock Island County, a reasonable observer could question the Chief Judge's impartiality if she were assigned to, or took administrative action in, this

case. To avoid any appearance of partiality, Petitioner requests reassignment by random draw to a United States District Judge other than Chief Judge Sara L. Darrow and requests that the Chief Judge take no substantive or administrative action in this matter. 28 U.S.C. § 455(a); Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860–61 (1988).

## VII. RULE 5 REQUESTS (RULES GOVERNING § 2254 CASES)

A. Order Respondent to answer and lodge the complete state-court record within twenty-one days, including: all OP orders and extensions; all service returns; minute sheets; transcripts and audio for March 22, 2022 and September 21, 2022; the September 25, 2020 order; and the January 23–24, 2025 filings and order.

B. Order preservation of all originals and electronic media (audio, stenographic notes, transcript drafts and metadata, e-service logs).

C. Permit Petitioner to file a Rule 5(e) reply within fourteen days after the Answer.

## VIII. EXHIBIT LIST

A. March 22, 2022 order imposing suspended custodial term. (p.1-3, & 6)

B. September 21, 2022 OP.

C. January 23, 2025 transcript objection in writing to Attorney Neppl and January 24, 2025 order declaring transcript "admitted and accurate." initialed "as to form".

D. Sworn affidavit and photo disproving false police report (April 21–22, 2025).

E. April 1, 2020 affidavit of Linda Jones initiating 20-OP-250.

F. September 25, 2020 order reflecting lack of notice at inception (p.6)

G. Illinois Supreme Court Rule 383 materials for No. 131821.

## IX. RESERVATION OF RIGHTS

A. Petitioner expressly reserves all claims and remedies under 42 U.S.C. §§ 1983 and 1985 and any other federal or state causes of action; nothing herein waives those claims.

## X. REQUESTED RELIEF

A. Issue the writ under 28 U.S.C. §§ 2241–2243 and declare the September 21, 2022 order of protection void and unenforceable for noncompliance with 750 ILCS 60/214(c), 60/220(e), 60/222, 60/223(d), and Rule 272, and for due-process violations.

B. Enjoin Respondent and those acting with him from enforcing or causing enforcement of that order, including any arrest, charge, or prosecution premised on it.

C. Vacate any punitive contempt restraints imposed without criminal-contempt safeguards.

D. Order any further relief necessary to effectuate the writ, including recall/cancellation of warnings and database entries referencing the September 21, 2022 order.

9

## XI. CONCLUSION

The "to 12/31/2099" order is facially unlawful on the statute's own terms and procedurally defective in ways that create an unacceptably high risk of erroneous restraint. Federal relief is warranted.

RESPECTFULLY SUBMITTED

Dated: _September 18th_, 2025

By: _[signature]_

Aimee Lynn Albrecht, Petitioner

200 W Spring Grove Ave., Alexis, IL 61412

309-221-3270

aimeelalbrecht@yahoo.com

VERIFICATION

I, Aimee Lynn Albrecht, declare under penalty of perjury that I am the Petitioner; I have read this Petition; and the facts stated are true and correct to the best of my knowledge, information, and belief. Executed this _18th_ day of _September_, 2025, at _Alexis, Warren Co._, Illinois.

_[signature]_

Aimee Lynn Albrecht

CERTIFICATE OF SERVICE

I certify that on this _18th_ day of _September_, 2025, I served a true and correct copy of the foregoing Petition and exhibits by first-class U.S. Mail, postage prepaid, to:

Sheriff of Rock Island County,

1317 3rd Avenue,

Rock Island, IL 61201


Office of the Illinois Attorney General,

500 South Second Street,

Springfield, IL 62701

Aimee Lynn Albrecht, Petitioner

200 W Spring Grove Ave., Alexis, IL 61412

309-221-3270

aimeelalbrecht@yahoo.com

AFFIDAVIT OF AIMEE LYNN ALBRECHT

IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

Declaration under 28 U.S.C. § 1746

1. I am an adult resident of Warren County, Illinois and the Petitioner in this action.

2. On September 21, 2022, a plenary order of protection was entered in 20-OP-250, treated with 16-P-313, purporting to continue "to December 31, 2099 at 10:00 a.m."

3. The order imposes arrest-backed restraints on my liberty, including no-contact and location bans enforceable by criminal penalties.

4. The prior OP did not expire until September 26, 2022. The September 21, 2022 order was not served on me until September 29, 2022.

5. On March 22, 2022, the court imposed a suspended 13-week custodial term based solely on an anonymous phone call allegedly made to my sister; no evidence identified me as the caller.

6. On January 23, 2025, I submitted a written objection identifying omissions in a transcript. On January 24, 2025, an order declaring the transcript "admitted and accurate" was entered and concealed from me by then-counsel.

7. On April 21–22, 2025, my then-counsel caused a false police report to be filed against me; witness sworn materials refute the allegation.

8. I submitted a Rule 383 Supervisory Petition to the Illinois Supreme Court (No. 131821); it was kept off the public docket and dismissed without transparent reasoning.

9. In September 2020, a written order reflects that I did not receive notice at the inception of the guardianship.

10. I do not possess certified copies of all state records. I respectfully request that Respondent be ordered under Rule 5 to lodge certified records and that the Court enter a preservation directive.

11. This affidavit verifies the factual allegations in my Petition and authenticates the attached exhibits to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 18 day of September, 2025, at Alexis, Warren Co., Illinois.

Aimee Lynn Albrecht, Petitioner

**Exhibit A**
March 22, 2022

Order Imposing Suspended 13-Week Sentence (p 1-3, 5,7 &8)

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT

COUNTY OF ROCK ISLAND AND STATE OF ILLINOIS

FILED in the CIRCUIT COURT
of ROCK ISLAND COUNTY
CIVIL DIVISION

MAR 2 2 2022

*Jammy Ridgewerd*

Clerk of the Circuit Court

| | | |
|---|---|---|
| IN RE: THE INTEREST OF: | ) | |
| JULIE JONES, | ) | NO. 16 P 313 |
| A Person With a Disability | ) | |

| | | |
|---|---|---|
| LINDA JONES, | ) | |
| Petitioner, | ) | |
| v. | ) | NO. 20 OP 250 |
| AIMEE ALBRECHT, | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

The above-entitled causes, previously consolidated into 16 P 313, came on for hearing on the 17th day of February, 2022 before Linnea E. Thompson, Judge Presiding, on three (3) Petitions for Rule to Show Cause filed October 13, 2020, February 19, 2021 and December 29, 2021 by John Jones and/or Linda Jones, the co-guardians of the person and estate of Julie A. Jones, a person with a disability, and against Aimee Albrecht. The petition filed on February 19, 2021 also is filed against the husband of Aimee Albrecht, Dirk Albrecht.

Linda Jones, individually and as the current sole guardian of the person and estate of the ward, Julie Jones, appeared in person and with her attorneys, Mary Ann Brown and JohnPatrick Brown; Aimee Albrecht appeared self-represented. Dirk Albrecht appeared self-represented but remained outside of the courtroom through most of the proceedings. The ward's guardian ad litem, William Breedlove, and the ward's court-appointed attorney, Aaron Dyer, appeared for the first hour of the all afternoon proceeding.

Linda Jones and Julie Jones are both protected parties under a plenary order of protection entered in 20 OP 250 on September 25, 2020. Two other individuals included as protected parties under the order of protection have died during the pendency of these proceedings. John Jones died on July 3, 2021. Jay (Jarie) Akers died on December 19, 2020.

1

The petitions allege, among other things, that Ms. Albrecht or third parties on her behalf violated the order of protection by telephoning the residential facility of the ward in order to speak with the ward, by telephoning the hospital where Jarie was hospitalized, by arranging for a Violation Warning to be served on the attorneys of record and the judge, and by failing to pay her court-ordered attorneys fees as set forth in the Court's Opinion and Order entered on September 25, 2020.

At the conclusion of the hearing, the Court took its decision under advisement.

### Background

The petitions for rule to show cause were not specific as to what type of contempt finding was sought against Aimee and Dirk, although as part of a prayer for relief reference was made to indirect civil contempt.

The conduct directed at the Court by Aimee would historically be direct criminal contempt. An action for direct criminal contempt requires a separate cause of action and would have entitled Aimee to the appointment of an attorney.

Aimee's alleged conduct could also fall under indirect criminal contempt. Indirect criminal contempt requires not only the filing of a petition or complaint but also personal service of the complaint. The hearing would have been conducted by a different judge and also would have entitled Aimee to a court-appointed attorney.

The Court interprets each of the petitions for rule to show cause as petitions seeking a finding of indirect civil contempt.

The Court's order of September 25, 2020, directed Aimee to pay a total of $6,000.00 toward John and Linda's attorney's fees, a total of $3,000.00 toward the fees of Bill Breedlove and a total of $3,000.00 toward the fees of Aaron Dyer.

### Analysis and Opinion

#### Petitions for Rule to Show Cause

##### (Petitions for Finding of Indirect Civil Contempt)

##### Violations of Order of Protection

#### Dirk Albrecht

The Court first addresses the petition for rule to show cause against Dirk Albrecht (hereinafter referred to as Dirk).

2

As the result of an unintended oversight, Dirk was never admonished on the pending petition for rule to show cause filed against him. Dirk was excluded as a witness during the hearing even though he was actually named as a party in one of the petitions for rule to show cause. No evidence was presented during the hearing against Dirk. Dirk was never called as a witness. More importantly, Dirk was never offered an opportunity to defend himself against the allegations made against him.

As a result of these significant procedural oversights, the Court makes no finding on the petition for rule to show cause against Dirk.

The petition for rule to show cause against Dirk is continued generally.

### Aimee Albrecht

#### Julie and Jarie

The guardian alleges that during 2020, at least four (4) telephone calls were made to Julie by third parties at the request of Julie's sister, Aimee Albrecht (hereinafter referred to as Aimee). These calls do not include the telephone call alleged to have been made to Julie by Dirk.

The guardian, utilizing 750 ILCS 60/213.1, testified as to statements which Julie made to Linda in phone conversations with Linda immediately after Julie received phone calls from the third parties. This section of the Illinois Domestic Violence Act allows for the introduction of hearsay statements made by a high-risk adult with disabilities if that individual lacks capacity to testify. It should be noted that this section of the law is applicable for actions seeking an order of protection for a high-risk adult with disabilities, not necessarily for the presentation of evidence in a petition for a rule to show cause filed as a result of an alleged violation of an order of protection.

Even without reliance on Section 213.1, the Court limited the admissibility of hearsay statements by the ward to those statements which were made by the ward while the ward was under the continuing stress of excitement caused by the phone calls she had just received. Excited utterances are an exception to hearsay. Julie, the ward, is a protected party under the plenary order of protection. Julie continues to be an in-patient at Central Plaza Residential Care Facility in Chicago, IL and as such was not available to attend the hearing to testify.

Linda testified that Julie telephoned her shortly after Julie had received telephone calls from an unknown female caller who only identified herself as a friend of Aimee. The calls were made on October

3

11 and November 13. Julie thought that both calls were from the same female caller. The caller had told Julie that "your sister wants me to tell you"  that we're trying to get you out.

The Court disallowed testimony concerning a telephone call which Julie may have received on November 18.

Aimee argues that without knowing the name of the caller, she is unable to defend herself. Aimee claims that the calls could have been made by other family members who have an interest in Julie's well-being or by any of the anonymous donors to Aimee's cause. She also raised the possibility that she may have left some paperwork in the library and someone found the papers and used the information in the papers to call Julie. Finally, Aimee questions whether or not Julie may have been delusional when she related information about the calls to Linda.

Linda also testified that right before Christmas in 2020, Julie received a telephone  call from Rolando. Rolando is Jarie's father. The call from Rolando focused on Jarie's cancer, autopsy, funeral, and Julie's poor parenting of Jarie. Aimee did acknowledge that she had spoken to Rolando, discussed Jarie and provided Rolando contact information for  Julie.

Aimee denies that she violated the plenary order of protection after September 25, 2020.

Aimee did acknowledge that as Jarie's health declined, she became increasingly concerned that Julie and Jarie may not have the opportunity to see one another for one last time. At or about the time Aimee was served with the order of protection, Aimee was concerned about not taking any action which could violate the order of protection. She states that she first called the Illinois State Police seeking their advise as to what, if anything, she could do without violating the protective order. She claims  that the Illinois State Police told her it would not be a violation if she were to just call and leave a message without actually asking to talk to either Julie or Jarie.  According to Aimee, she did call Central Plaza and left a message that she was willing to arrange transportation or provide funds to enable Julie and Jarie to be together.  Aimee also called the University of Iowa Hospitals where Jarie was hospitalized and left a message with staff informing them that Julie was Jarie's mother and Julie's  contact information.

750 ILCS 60/103 (14.5) of the Illinois Domestic Violence Act provides, in part, as follows:

"'Stay away" means for the respondent". . . (Aimee) . . ."to refrain from both physical presence and nonphysical contact with the petitioner whether direct, indirect (including, but not limited to,

4

telephone calls, mail, email, faxes, and written notes) *or through third parties who may or may not know about the order of protection."* (emphasis added)

In the Opinion and Order issued with the order of protection on September 25, 2020, the Court explained, "Respondent must not have ANY . . . non-physical, direct or indirect contact with Petitioner." "This also includes contact through others . . ."

The court order went on to explain, " . . . even though Linda was the petitioner and even though Aimee was the respondent, the . . . order of protection prohibits Aimee from having any communication with not only Linda but also the other protected parties named in the order, to-wit: Julie, Jarie (Jay) and John. Not only is Aimee prohibited from having any communication with the protected parties, so is anyone else on Aimee's behalf. "

Unlike the petition for rule to show cause that was litigated on August 14, 2020, orders on each of the petitions for rule to show cause that came before this court for hearing on February 17, 2022, were entered and served upon Aimee. As such, the burden falls on Aimee to show the court why she should not be held in contempt of court for her conduct which Linda asserts is a willful violation of the order of protection.

The Court having considered the testimony and credibility of the witnesses, examined the pleadings and exhibits, and applying the applicable law, FINDS as follows:

1. The telephone calls made to Julie in October and November 2020, although made by an unidentified caller, were more likely than not made on behalf of Aimee. More likely than not is all that is required to meet the statutory burden of proof which, in this case, is a preponderance of the evidence. It is more likely than not that Aimee aided or encouraged individual(s) to call Central Plaza and speak with Julie and convey a message to Julie from Aimee. These telephone calls and conversations emotionally upset Julie. Aimee must be held accountable for these calls. In its Opinion and Order of September 25, 2020, the Court noted Julie's fragile mental state and denied Aimee's petition for visitation with Julie because of the Court's concern that any contact by Aimee could pose a risk to Julie. The plenary order of protection was entered, in part, to protect and safeguard Julie from any contact or communication from Aimee. The Court finds that **Aimee is in indirect civil contempt** for violating the plenary order of protection as a result of the October and November 2020

5

telephone calls made by third parties to Julie. The Court's sanctions for the violations are imposed, below.

2. The telephone call made to Julie by Rolando may or may not have been on behalf of Aimee. Certainly, Aimee and Rolando spoke with one another prior to Rolando's call to Julie. But Rolando and Julie have their own history. The substance of the conversation focused on Jarie. The Court finds that Rolando's call to Julie was **not** a knowing **violation** of the order of protection.

3. The telephone calls and messages which Aimee made to Central Plaza and the University of Iowa Hospitals were not directed to either Julie or Jarie and, according to Aimee, were not intended for either of them. Aimee made the calls and left the messages only after checking with the Illinois State Police who rightly or wrongly advised her that leaving the messages would not violate the order of protection. The Court finds that Aimee's telephone calls to and messages left with Central Plaza and University of Iowa Hospitals were **not** knowing **violations** of the order of protection.

### Non-Payment of Attorneys Fees

Linda's petition for rule to show cause filed on December 29, 2021 states that Aimee has only paid a nominal amount of the court-ordered attorney's fees to attorneys Mary Ann Brown and JohnPatrick Brown and -0- toward the court-ordered attorney's fees to Linda. No further evidence was presented to support this statement.

As stated above, while the burden was on Aimee to prove that she did not violate the court's order, there was insufficient evidence concerning the actual payments paid by or on behalf of Aimee to Linda and Linda's attorneys for court-ordered attorney's fees.

In addition, Aimee testified that she had suffered heart attacks and was experiencing serious physical health issues that prevented her from working.

The Court having considered the testimony and credibility of the witnesses, examined the pleadings and exhibits, and applying the applicable law, FINDS that Aimee's failure to pay the court-ordered attorneys fees to Linda and her attorneys was **not** a willful **violation** of the court's order of September 25, 2020.

6

### Service of Violation Warning

A Violation Warning referencing 18 USC Sections 245 and 246 was signed by Aimee and served upon JohnPatrick Brown, one of Linda's attorney, attorneys Bili Breedlove and Aaron Dyer, and this Judge. Aimee states that she did not prepare the Violation Warnings but knows who did. She also arranged for the service of the Warnings although she did not pay for the private process server. Aimee states that the service of the Violation Warnings was intended to put those who were served on notice that she was going to sue them.

18 USC Sections 245 and 246 are part of the federal government's criminal code. It is the federal government who prosecutes violations of these federal code sections. Historically, these code provisions have been used to prosecute those who violate another individual's civil rights.

The Violation Warning has no effective purpose in these proceedings other than to knowingly harass the individuals served. Service of the Violation Warnings was not necessary and had no valid reason or purpose. The service of the Violation Warning, especially in light of all of the harassing and abusive conduct and statements which Aimee directed toward these same individuals earlier in these proceedings, was intended to inflict emotional distress and, in fact, did cause emotional distress.

Aimee was previously admonished by more than one judge that her unsubstantiated threats could result in a finding of contempt. Aimee's arranging for the service of the Violation Warnings against the attorneys and the judge necessarily impugned the integrity of the judiciary and the legal system of justice and served only to undermine the public's confidence in the legal system.

The last time Aimee made false and inflammatory statements against the Court, the Court elected to impose no sanctions against her due, in large part, because Aimee offered an apology. That Aimee chose to continue her unwarranted assault against this Court and the legal system leave the Court no room to show any mercy.

The Court having considered the testimony and credibility of the witnesses, examined the pleadings and exhibits, and applying the applicable law, FINDS that that Aimee is in indirect civil contempt for serving the Violation Warnings on the attorneys of record and the judge. Sanctions are imposed, below.

7

## Sanctions

Linda seeks the imposition of a jail sentence for Aimee as and for a sanction for violating the order of protection and service of the Violation Warnings. Jail could be an appropriate sanction were the petitions for rule to show cause pursued as either direct or indirect criminal contempt instead of indirect civil contempt.

Ultimately, Linda expressed that shat she just wants Aimee to leave her and Julie alone.

The imposition of a jail sentence can be appropriate in a finding of indirect civil contempt if the purpose of the jail sentence is to force compliance with a court's order.

The maximum jail sentence which the Court may impose for a finding of contempt is six (6) months in the Rock Island County, IL Jail.

As and for a sentence and sanction against Aimee Albrecht for indirect civil contempt as set forth above, this Court sentences Aimee Albrecht to a sentence of thirteen (13) weeks in the Rock Island County Jail. This sentence is stayed provided that:

A.   Aimee Albrecht strictly complies with the provisions of the plenary order of protection to refrain from both physical presence and nonphysical contact with Linda and Julie whether direct or indirect including but not limited to telephone calls, messages, mail, email, faxes, social media posts, written notes, or any other form of communication including contact by or through third parties; AND

B.   Aimee Albrecht refrains from      making any false and/or derogatory statements, filing any false criminal or civil charges against Linda, any of the attorneys of record, the Court, the judges, or engaging in any other harassing, threatening and/or abusive conduct toward any of these parties.

Aimee holds the key to whether or not she will serve this jail sentence. The Court recognizes that Aimee feels that she alone knows what is best for Julie and that she feels an overwhelming need to do whatever she can to terminate the guardianship and to freely communicate with Julie. The Court previously had a hearing on Aimee's petitions to do just that and ruled against Aimee. There are legal remedies available to safeguard Julie's well-being. Aimee is not being punished for pursuing legal remedies. Aimee is being sentenced for willfully failing and refusing to follow and comply with court orders directing her to have no contact with Julie and for willfully and unapologetically continuing to

8

engage in egregious, malicious, false, hurtful and harassing conduct toward the this Court, the attorneys before this Court, and the legal system as a whole. This conduct must stop. It will not be tolerated.

The next time Aimee violates the order of protection or engages in unacceptable behavior toward this Court, the attorneys or the legal system, an order of body attachment shall issue and the Sheriff's Department will be directed to take Aimee into custody to serve her sentence.

MARCH 22, 2022

ENTER:

Linnea E. Thompson, Judge

Copies to:

mabrown@nashbeanford.com

jbrown@nashbeanford.com

william@breedlovelegal.com

aarondyerlaw@yahoo.com

aimeelalbrecht@gmail.com

aimeelalbrecht@yahoo.com

Dirk Albrecht, 200 W. Spring Grove Ave., Alexis, IL 61412

9

**Exhibit B**
September 21, 2022 Order expiring December 31st, 2099 at 10:am
(Docker- Served September 29, 2022)

_____

131821

**ORDER FOR EXTENSION AND/OR MODIFICATION**
**OF ORDER OF PROTECTION**

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT**
**ROCK ISLAND COUNTY, ILLINOIS**

Linda Jones
on behalf
of Julie Jones

No. 20 OP 253
(11-P 313)

Respondent: _____ Albrecht

☐ Independent Petition
☐ Criminal Proceedings
☐ Dissolution

The court finds that  ☐ an emergency
☒ a plenary
☐ an interim

FILED IN THE CIRCUIT COURT
OF ROCK ISLAND AND OBSERVER
CML DIVISION
SEP 21 2022
Clerk of the Circuit Court

was entered on  9/25/2020

The court having jurisdiction of the subject matter, is hereby

1. ☒ An extension of the  ☐ emergency
                          ☒ plenary
                          ☐ interim

is granted and is hereby extended to
December 31, 2099, 11:59 P.M.

4. The  ☐ emergency
        ☐ plenary
        ☐ interim

Is hereby modified as follows:

2. ☐ A hearing on the  ☐ emergency
                        ☐ plenary
                        ☐ interim

is set for _____ 20 ___ at 10 Am
or until further order
of court

3. ☐ The  ☐ emergency
          ☐ plenary
          ☐ interim  is vacated

Petitioner's Name _____
Address _____
City _____
Telephone _____

Judge

Date Sept 21 2022

Copy provided to Petitioner
Respondent to be Served.

SUBMITTED - _____

**Exhibit C**

January 23, 2025 – Written Transcript Objection to Attorney Neppl

and
January 24, 2025 – False "Admitted" Order

Aimee Albrecht

To: me · Mon, Feb 17 at 7:36 PM

## Message Body

On Sunday, January 26, 2025 at 09:24:55 PM CST, Jeffrey Neppl <jeffrey@theneppllawcentre.com> wrote:

Aimee,

I'm assuming you discussed this with Jeff on your meeting with him last week. If that is not the case, please call Tammie at the office and set up a telecon with Jeff to discuss.

Thanks,
Nicole

---

From: Aimee Albrecht <aimeelalbrecht@yahoo.com>
Sent: Thursday, January 23, 2025 9:15 AM
To: Jeffrey Neppl <jeffrey@theneppllawcentre.com>; Ana Chicos <ana@theneppllawcentre.com>
Subject: Sisters Aimee & Julie

Jeff, Ana

Greetings.

Jeff on the phone, you told us (me and Dirk) "I don't know what JPB's intention's are about on admit or deny" Here is what: JPB knows : WHAT IS MISSING!, this is all so Gangster. I WANT THE ORIGINAL TRANSCRIPT BEFORE ALEXIS SKINNER's 'BOSS' BECKY EDITED IT! ORIGINAL CORRECT TRANSCRIPT by Alexis Skinner. I emailed her, I admit when Alexis would not reply, I warned her that Transcript

Tampering is a Felony, Becky likes JPB or whatever yuck I picked up on, justice is not about 'favors' flavors?Incredible, anyway I called  RICO  Administrative offices and the Illinois Supreme Court of Illinois.

I Deny the Transcritp is accurate. After I made my statement to the Judge charging my mom Linda with murder, Linda laughed and said "me me" JPB said "Shut up Linda" Judge Linnea Thompson heard the entire interaction. Then Linda Lied in her Affidavit after I saw Julie! saying that I evaded the Police! Omg Police were all over the place! I asked JUlie, am I getting arrested? She said NO , to come with her. I did, I wanted to room -mate with her! Why does Linda just get to lie and lie and lie!?

What is diabolical to me is that it was removed from transcript, why? From the First Affidavit Linda wrote she self indicted herself, on and on. Ralawndo has a story. And F**** everyone who says he failed- WE will never know, as The Father established under the Parentage Act, was Not Noticed, We do Not know if he would of come forward or his parents, Julie either for that matter in 2011.

Another Admit or Deny question that I remember is :  about the transcripts for Appeal- that Aimee "ONLY" getting so many TRanscripts. There was 1 the 6 hour TRial- I was Pro-SE that one $3000. I even asked Mr. Breedlove & Mr. Dyer in writing to share the cost with me as they said they had "split it" . Yes right 3k I have several who told me That is outrageous! Because the Parties are Terrified of that Transcript! OMG You would be Stunned - so much of the truth that came out, yet it was all allowed .... They Could NOT Impeach Me Jeff! Dyer even said he was trying to! That was August 2020. A second opinion, autopsy at the very least, I was in time for... *When I Appealed, what does It Matter ~IF Transcripts do Not have a Fail-safe to be correct and accurate?* ...

Jeff, I do not know what to think ... I want to speak with the friend/partner you mentioned. If there is No Fail Safe For COMPLETE ACCURATE TRANSCRIPTS IN A COURT~ that in and of... I really need to Sign something, But It is Not going to be Agree to more abuse of Aimee! OP expiring Dec. 31st 2099 is About ME. For Julie the court

part, my sister she is too frail as she said in the recording " Big Julie can speak up, but Little Julie cannot!" I want her kept safe out of it, enough has been done to her, and by failing her, if there is any hope for her, the Life, SMILES, giggles, laughter that I brought out in her was good, right and healthy!

In Liberty,

Aimee

**STATE OF ILLINOIS**
**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT**
**ROCK ISLAND COUNTY**

_____ DIVISION

FILED in the CIRCUIT COURT
of ROCK ISLAND COUNTY

JAN 2 4 2025

Janory Ashimoto
Clerk of the Circuit Court

In re _____ PLAINTIFF

2016P313/2020P250
CASE NUMBER _____

vs

Jones, Respondent, DEFENDANT

**ORDER**

Attorney Jb Brown appears for Guardian; Jeff Neppl appears for divnee Albrecht;

① Motion to deem admitted granted in full.

② Motion to compel is granted; discovery to be answered within 7 days

③ Attorney fees reserved.

④ Pretrial motions to be heard at time of trial.

APPROVED
as to form: [signature]

Jan. 24, 2025
DATE

_____
JUDGE OF THE FOURTEENTH JUDICIAL CIRCUIT

**Exhibit D**
Sworn Affidavit and Photo
Disproving False Police Report
(April 21-22, 2025)

_____

To whom it may concern:

STATEMENT

My name is Corey Harland. I am 35, a retired soldier, and reside in Martinez, Georgia. I arrived at my mom Aimee Albrecht's house in Alexis, Illinois, on April 18th, 2025. At approximately 3 p.m., I checked into the Hyatt Hotel in East Moline. For travel purposes, my mom left her vehicle with me for the duration of my stay in Illinois.

On April 21st, I had my mom's car the entire day, visiting family members. I checked out of the hotel and stayed at my mom's house the evening of April 21st.

On April 22nd, I was with my mom most of the day, and on April 23rd, again, I was with my mom most of the day. That evening, we all went to a track meet. On April 24th, I left Illinois to return to Georgia.

VERIFICATION

I, Corey Harland, affirm under penalties of perjury pursuant to 735 ILCS 5/1-109 that the above is true and correct to the best of my knowledge.

Signed on June 22, 2025.

Corey Harland
1436 Collins Dr
Martinez, GA 30007 309-269-6537
coreyw.harland@gmail.com



**Exhibit E**
April 1, 2020
Affidavit of Linda Jones
Initiating Order of Protection



COPY

Enter the Case Number given by the Circuit Clerk: _____

7. An Order of Protection is needed because Respondent did these things:

Date: _____   Time: _____   What happened: _____

[text illegible due to scan quality]

Date: _____   Time: _____   What happened: _____

[text illegible due to scan quality]

Date: _____   Time: _____   What happened: _____

Aimee also uses or has used the lastnames "Allender," "Hawking," and "Harland," and "Stanger."

Date: _____   Time: _____   What happened: _____

**Exhibit F**
September 25th, 2020 Order

lack of notice intentionally at inception (p6)

---

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT

COUNTY OF ROCK ISLAND AND STATE OF ILLINOIS

| | | |
|---|---|---|
| IN RE: THE INTEREST OF: | ) | |
| JULIE JONES, | ) | NO. 16 P 313 |
| A Disabled Adult. | ) | |

FILED in the CIRCUIT COURT
of ROCK ISLAND COUNTY
GENERAL DIVISION

SEP 2 5 2020

_____
Clerk of the CIRCUIT Court

| | | |
|---|---|---|
| LINDA JONES, | ) | |
| Petitioner. | ) | |
| v. | ) | NO. 20 OP 250 |
| AIMEE ALBRECHT, | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

The above-referenced cases came on for hearing on the 14th day of August, 2020, before Linnea E. Thompson, Judge Presiding, on Co-Guardians' Annual Report, Petition for Plenary Order of Protection, Motion for Sanctions, and two Petitions for Rule to Show Cause filed by Co-Guardians against Aimee Albrecht, and on Aimee Albrecht's Petition to Vacate the Adjudication of Julie Jones and Petition for Visitation with the ward. Co-Guardians of the Person and Estate of Julie Jones, a disabled adult, John Jones and Linda Jones, appeared in person and with their attorney, JohnPatrick Brown, guardian ad litem for the ward, Bill Breedlove, participated by telephone, the court-appointed attorney for the ward, Aaron Dyer, appeared in person, the ward's sister, Aimee Albrecht, appeared self-represented, and interested parties, Jamie Jones and Jarie Akers, a/k/a Jay Akers and Jay Jones, participated by telephone. For good cause, the presence of Julie Jones was waived.

The Court previously disposed of other petitions and motions including the co-guardians' annual accounting, Aimee Albrecht's Petition to Remove the Co-Guardians, Motion to Strike, Motion to Bar Attorneys, Motion for Contempt and Motion to Dismiss Guardian ad Litem's Response.

Prior to the contested court hearing, the court reviewed the ward's mental health records from Central Plaza in camera and pursuant to the Illinois Mental Health and Developmental Disabilities Act determined that the records, with limited exceptions and purposes, were inadmissible.

1

At the conclusion of the presentation of Aimee Albrecht's case, attorney Breedlove's motion for a directed verdict on the issue of Aimee's motion to vacate the guardianship was granted.

At the conclusion of the hearing, the Court took its decision on all other remaining matters under advisement.

The Court requested a copy of the power of attorney of Jarie (a/k/a Jay) Akers which was subsequently provided to the Court.

### Factual Background

Julie Jones (hereinafter referred to as Julie) whose date of birth is May 23, 1980, and who is, therefore, 40 years of age, was adjudicated a disabled adult on December 2, 2016. Julie is the daughter of John Jones (hereinafter referred to as John) and Linda Jones (hereinafter referred to Linda). John and Linda were appointed and currently serve as Julie's plenary co-guardians of the person and estate. The co-guardians' powers include the authority to make residential placement.

Julie is diagnosed with, among other things, paranoid schizophrenia and chronic mental illness.

The initial petition for adjudication includes the names of Julie's adult siblings, Jamie Jones and Aimee Hankins (a/k/a Aimee Jones and n/k/a Aimee Albrecht) (hereinafter referred to as Aimee). Aimee's address is listed as unknown. As such, Aimee did not receive notice of Julie's adjudication. Aimee disputed that her whereabouts were unknown to Linda in 2016 . The Court previously ruled that there was no procedural basis for vacating Julie's adjudication or the appointment of John and Linda as Julie's co-guardians.

Julie was admitted to Central Plaza Residential Care Facility in Chicago, IL on September 28, 2016. Central Plaza is a 24 hour recovery oriented residential treatment facility for adults with serious mental illness  Julie continues to be an in-patient at Central Plaza. John and Linda testified that Julie has made gradual, albeit slow, progress at Central Plaza.

Julie has one son, Jarie (a/k/a Jay) Akers (a/k/a Jones), (hereinafter referred to as Jay), whose date of birth is April 22, 2001, and who is, therefore, 19 years old. John and Linda were appointed co-guardians of Jay on August 16, 2011, in Case No. 11 P 248. The guardianship expired on Jay's 18th birthday. Jay continues to reside with his maternal grandparents in Moline, IL. In early 2020, during Jay's senior year in high school, Jay was diagnosed with an inoperable, terminal brain tumor. Jay signed a medical power of attorney on January 30, 2020, nominating John as his first choice and Linda as his backup choice.

2

Aimee is 9 years older than Julie. Aimee has been married to Dirk Albrecht (hereinafter referred to as Dirk) for about 8 years. Aimee and Dirk moved to Alexis, IL in January 2020. Prior to January, Aimee has lived Arkansas, Missouri, Illinois and Montana.

Aimee and her mother, Linda, have been estranged since Aimee's childhood.   Among other things, Aimee accuses Linda of torture, abuse, assault, battery, attempted murder and injecting her with unknown substances.   Aimee believes that Linda may have subjected Julie to the same abuse. Aimee believes that her sharing this purported history with Julie or Julie's caregivers could help Julie and set her free.

Aimee hasn't seen Julie for at least five years. Aimee learned about Jay's medical diagnosis from an internet posting publicizing a fundraiser for Jay. Aimee and Dirk attended the fundraising event. Jay was not aware his mom had a sister. Aimee attempted to seek out information about Julie at the event. Upon noticing Aimee at the fundraiser, Linda went up to Aimee and asked her to leave. Aimee told Linda that Jay's paternal relatives were on their way. Aimee did not leave immediately as she wanted to bid on some items. Aimee and Dirk ended up leaving before the auction.   A short time after the event, Aimee learned that Julie was institutionalized in Chicago.

At Linda's request, Central Plaza established a password to be used in order for third parties, including Aimee, to gain access to Julie.

Aimee apparently successfully breached the password security system and had a phone conversation with Julie.

On April 1, 2020, Linda was granted an emergency order of protection against Aimee. The protective order includes Linda, John, Jay and Julie as protected parties.

On April 3, 2020, John and Linda filed a petition for a rule to show cause against Aimee alleging among other things, that Aimee had filed various pleadings which included false and malicious allegations against John and Linda, contained irrelevant information, included threats against John and Linda, the guardian ad litem, the petitioners' attorneys and the ward's court-appointed attorney. The petition seeks a finding of contempt and the imposition of punitive sanctions.

On July 28, 2020, John and Linda filed a second petition for a rule to show cause and motion for sanctions against Aimee. The petition accuses Aimee of filing a false and defamatory police report against John and Linda, individual judges and the attorneys in this case, filing multiple baseless pleadings seeking

3

emergency relief, and violating the emergency order of protection by having third parties contact Julie and Central Plaza.

The co-guardians, Julie's guardian ad litem and Julie's court-appointed attorney all presented fees petitions. Each attorney attributes a large portion of his or her fee petition to Aimee's attempting to introduce irrelevant matters into the proceedings such as Jay's welfare, Jay's paternal family, matters that occurred decades ago, responding to Aimee's deficient and improper pleadings some of which include cites to the United State Code and other non-binding court cases, Aimee's filing false and malicious pleadings, a false police report, and disciplinary complaints.

## Analysis and Order

### Annual Report

Since their appointment as co-guardians in 2016, John and Linda have filed annual accounts and reports. Their most recent annual report was filed on May 6, 2020. Aimee objects to some of the statements included in the report. The Court reviewed the report in light of the evidence presented and finds that there is no legal or factual basis as to why the report should not be approved as filed. The annual report of the co-guardians of the person is approved. The next annual report will be due in March 2021.

### Petition for Visitation

Aimee wants to be able to have contact with Julie. Aimee has had at least one telephone conversation with Julie since March or April of this year. In an effort to prevent Aimee from contacting Julie while Julie is a resident patient of Central Plaza, John and Linda, as Julie's co-guardians, directed Central Plaza to implement a security code on all incoming telephone calls to Julie. In person visits with Julie are currently not an option due to restrictions imposed as a result of the Covid-19 pandemic. Aimee believes that her telling Julie how Aimee believes John and Linda treated Julie in the past will yield positive results in Julie's treatment for mental illness. Prior to Aimee contacting Julie this year, Aimee had not had any contact with Julie for at least five years. Aimee claims that she had asked different people about Julie and Julie's whereabouts over the years but she had only learned of Julie's condition and whereabouts after Jay's fundraiser. Linda also filed a petition for an order of protection against Aime to prohibit Aimee from having any contact or communication with Julie.

755 ILCS 5/11a-17 (g)(2) of the Illinois Probate Act provides, in part, as follows:

4

*[illegible faded statute text block]*

Pursuant to this statute, the Court must first determine if Julie has the capacity to evaluate whether or not she wishes to exercise visitation with Aimee and, if so, whether or not Julie has expressed a desire not to have visitation with Aimee.

Julie has had a long history of mental illness as an adult. She is diagnosed with paranoid schizophrenia. Julie was adjudicated a disabled adult in 2016 and has been a resident of Central Plaza since 2016.

Aimee claims that during her phone conversation with Julie, Julie expressed a desire to maintain contact with Aimee. Aimee taped her phone conversation with Julie and apparently shared the recording with the attorneys in this case. No one attempted to admit the recording as evidence. As such, the date of the conversation and the content of the conversation is not known.

Julie and Aimee's brother, Jamie Jones, maintains regular phone contact with Julie, talking to her a couple times a week. Jamie stated that he had talked to Julie the day before the hearing and Julie expressed that she was unsure if she should talk to Aimee. Jamie testified that Julie does not know the difference between right and wrong.

According to the guardian ad litem, Julie told him that if she were to have contact with Aimee a purple cloud of smoke will eat her children and Aimee's children.

According to Julie's court-appointed attorney, Julie has expressed that she wants contact with Aimee on occasion irrespective of who initiates the contact. Julie's attorney stated that Julie had also mentioned a purple cloud of smoke.

While different inferences can be made from Julie's statements to others, considering the totality of the evidence, the Court does not believe that Julie is capable of clearly expressing her preference as to whether or not she wants contact with Aimee.

5

Pursuant to statute, when the ward's preference cannot be ascertained, the decision as to what, if any, visitation Julie should have and with whom, falls upon the ward's guardian(s) of the person. Decisions made on behalf of a ward by a guardian should be made as closely as possible to what the ward, if competent, would do under the circumstances. In attempting to substitute their judgment for Julie's, the applicable statute directs John and Linda to consider such things as Julie's personal, philosophical, religious and moral beliefs, and ethical values. 755 ILCS 5/11a-17 (e)

Little, if any, evidence as to Julie's personal beliefs and values was presented by any of the parties.

When the ward's wishes and beliefs are unknown, the guardian must make a decision based upon what the guardian believes to be in the ward's best interests. In determining the ward's best interests, the statute requires the guardian to " . . .weigh the reason for and nature of the proposed action, the benefit or necessity of the action, the possible risks and other consequences of the proposed action, and any available alternatives and their risks, consequences and benefits, and . . . take into account any other formation, including the views of family and friends, that the guardian believes the ward would have considered if able to act for herself or himself." 755 ILCS 5/11a-17 (e)

ne of Aimee's intended purposes in wanting to have contact with Julie is to tell Julie what Aimee believes Linda put them through years ago. Despite not having any contact with Julie for at least five years, Aimee also claims that she and Julie have a good relationship.

Linda admits that she did not want Aimee to know where Julie was. Linda claims that past interactions between Julie and Aimee have not been healthy. When asked to provide examples, Linda cited an incident involving Aimee and Julie when Julie was 16 years old. Another incident cited by Linda involved Aimee leaving a note at Julie's apartment telling Julie to designate Aimee as Julie's social security disability payee.

Both Aimee's request for visitation with Julie and Linda's efforts to block any contact of Julie by Aimee could be motivated, at least in part, by the long, toxic history between Aimee and Linda.

There was no evidence to suggest that Julie had inquired about Aimee or requested contact with her before or during her stay at Central Plaza.

Based upon Julie's current mental state, Jamie did not think it would be in Julie's best interest to talk to Aimee.

6

John, who is a physician, observed that when Julie is in a stressful situation, Julie either retreats to bed or becomes hyperactive.

John and Linda testified that Julie had been making gradual progress while at Central Plaza. John also noted that there has been a slow-down of that progress in the last few months. Linda claims that Julie has gotten confused and upset when Aimee has been in contact. There is no way of knowing with certainty what, if any, effect Aimee's conversation with Julie had on Julie. It is also during this same time frame that Julie learned about her son Jay's brain tumor and new protocols were instituted as a result of the Covid-19 pandemic.

Julie's guardian ad litem does not believe that it is in Julie's best interest to have any contact with Aimee.

Aimee's husband, Dirk, admitted that he had at least one phone conversation with Julie that lasted 8 – 10 minutes. Dirk also acknowledged that he had written Julie once in May of this year.

There was some suggestion that contact between Julie and Aimee could be limited to when Julie were to request that she be able to contact Aimee, or that any interaction between Julie and Aimee could be supervised and terminated in the event the interaction were deemed inappropriate or was thought to be having an adverse effect on Julie.

Julie's mental state is fragile. It is reasonable to assume that exposing Julie to Aimee's allegations, truthful or fabricated, could certainly adversely impact any progress which Julie has achieved during her stay at Central Park. If there were any possible benefits to Julie from Aimee's having contact with Julie, no evidence was presented to indicate that Julie's treating physicians had made any such suggestion or recommendation. The risk to Julie of having visitation with Aimee in whatever form and with whatever safeguards were in place seems to outweigh any possible benefit.

The Court considering the testimony of the witnesses and their credibility, applying the statutory factors and being fully advised, finds that the co-guardians' denial of Aimee's request for visitation with Julie is not in Julie's best interest at this time and that the co-guardians' denial of visitation between Julie and Aimee is not unreasonable under the circumstances. Aimee's petition for visitation is denied.

### Petition for Plenary Order of Protection

On April 1, 2020, on behalf of herself, John, Julie and Jay, Linda filed a petition for order of protection against Aimee. The court granted Linda an emergency order of protection. In support of the

7

petition, Linda's cites that Aimee appeared at a fundraiser for Jay and refused to immediately leave when Linda told her to do so. Aimee did eventually leave without incident. Linda also cites incidents involving Aimee that were distant in time. The petition also claims Aimee made multiple phone calls to the hospital seeking information about Jay. No evidence was presented at the hearing to support this allegation. Aimee apparently breached security measures implemented by Central Plaza at the request of Linda and John and was able to speak to Julie. Linda claims that the conversation between Julie and Aimee included statements by Aimee that Aimee would try to change the guardianship as well as attempt further contact with Julie in the future. This statement was not denied by Aimee.    Linda's petition also includes allegations about a past unsubstantiated charge of assault and battery against Aimee and an accusation that Aimee had stolen a gun a few years ago from the home of Linda's father. None of these allegations by Linda rise to a level which would support the issuance of an order of protection.

Finally, Linda's petition mentions the documents which Aimee has filed in Julie's guardianship file which, according to Linda, include false allegations against Linda.

Prior to April 1st, among the documents filed by Aimee in Julie's guardianship file were the following:

- Police Report, Notice of Mandatory Reporting Duty, Sworn Statement, Sworn Criminal Charges against Linda Jones and others found to be involved. This document charged Linda with assault, battery, attempted murder and numerous false statements to public officials. The document also stated that Linda had tortured, tormented, abused, psychologically traumatized and injected Aimee with unknown and experimental substances. Aimee charged that Julie was "missing" and was being abused by Linda. Aimee also stated under oath that Linda is a very dangerous mentally ill individual and that Linda was a danger to Julie and Jay. There is an inference that Aimee filed a copy of this report with the Moline Police Department.

- Motion for No-Notice, Ex Parte, Walk-in Emergency Temporary Order and Temporary Restraining Order. In this motion, Aimee claimed that unless the Court granted her motion for visitation with Julie and investigated Julie's mental health condition, Julie could face death or injury. Aimee mailed a copy of her motion to the Rock Island County State's Attorney's Office.

- Motion to Set Aside for Fraud, Mistake and Error and Motion for Temporary Guardianship. In this motion, Aimee alleged participation in Julie's illness by Linda and John and accuses Linda and John of severe criminal behavior and activity. Aimee mailed a copy of this motion to the Rock Island County State's Attorney's Office.

8

The Illinois Domestic Violence Act (725 ILCS 5/112A-3 (4)) defines "harassment" as knowing conduct which is not necessary to accomplish a purpose which is reasonable under the circumstances, would cause a reasonable person emotional distress and does cause emotional distress.   While Aimee was within her legal right as Julie's sister to raise legitimate concerns about Julie's well-being and to petition for visitation with Julie, Aimee intentionally and willfully and with the intention of harming Linda included unsubstantiated accusations against Linda in her court filings.  Aimee also attempted to file a police report based on these unsubstantiated accusations and sought to have Linda criminally charged. Aimee mailed copies of her filings with the accusations against Linda to the State's Attorney's Office.   The conduct on the part of Aimee was not necessary nor was it reasonable in order to pursue her legal rights. The conduct on the part of Aimee was intended to cause Linda emotional distress and did cause emotional distress.

The Court finds that  Linda met her burden of proof  for an order of protection against Aimee by a preponderance of the evidence.  A two-year plenary order of protection is granted in favor of Linda and against Aimee.  A separate Plenary Order of Protection shall issue simultaneously with this Opinion and Order.

Linda, as petitioner, and John, Julie and Jay (Jarie Akers) shall be  included as protected household members under the order of protection.

The Court wishes to respond to Aimee's  complaint that the petition for order of protection was not timely heard.  750 ILCS 60/202 (c ) provides that an independent  action may be consolidated with another civil proceeding.  The allegations in Julie's guardianship case and Linda's petition for an order of protection involved the same individuals and  issues.  As such, it was appropriate that these cases were consolidated and heard together.  The Court agrees that a petition for an order of protection is generally an expedited  proceeding.  Continuances in order of protection cases should only be granted for "good cause"  and should be kept to a minimum.  (750 ILCS 60/213 (b))  The allegations made by Aimee necessarily required investigation by the co-guardians, Julie's guardian ad litem and court-appointed attorney.  Further and uniquely, the  Covid-19 pandemic resulted in drastic restrictions on courthouse operations not to mention the restrictions imposed by our state's governor on all residents of Illinois.  By order of the Illinois Supreme Court and the Chief Judge of the 14th Judicial Circuit, of which Rock Island County is a part, only certain court  cases  could be heard until at least July 20, 2020.  The hearing on these cases was held on August 14, 2020, necessitated a full-day hearing and the coordination of

schedules for the judge, three attorneys, witnesses, and parties.   Under the circumstances, these cases were heard as quickly as possible.

Pursuant to 750 ILCS 60/214 (b)(13), the Court may order the respondent to pay the petitioner . . . reasonable attorney's fees. . ."  The Court's award of attorney's fees is addressed, below.

### Petitions for Rule to Show Cause

### Motion for Sanctions

No orders on the petitions for rule to show cause were submitted or entered and served on Aimee. If orders had been entered and served prior to the contested hearing, the entry of the orders would have established a prima facie case that the allegations set forth in the petitions were true and the burden would have shifted to Aimee to prove why she should not be held in contempt of court. Instead the burden of proving that the alleged conduct of Aimee was willful and contemptuous falls on the petitioners, John and Linda

In order to address the many allegations in the petitions, the Court has categorized the allegations into more manageable subparts.

### Judges and Courts

Aimee made false and defamatory statements against the court and its judges in almost each of her many court filings. Most of Aimee's statements were made under oath. Aimee falsely accused judges of being involved in kidnapping Julie and Jay, conspiring with John and Linda, conspiring with the attorneys involved in this case, accepting kickbacks or payoffs, failing to follow statutes and due process, refusing to conduct hearings, of openly expressing bias against her, of having intimate relations with Linda, and generally being corrupt. Aimee filed a sworn police report against the judges.

At the hearing held July 30, 2020 on Aimee's Motion to Change Venue and Judge, the judge assigned to the hearing admonished Aimee that she could be facing contempt charges for her accusations made without supporting evidence. At the pre-trial held on August 7, 2020 this Court also admonished Aimee that her false and defamatory statements and threats could result in a finding of contempt and directed Aimee to be prepared to apologize not only to the court but also the parties and their attorneys prior to the beginning of the hearing on August 14, 2020.

The petitions for rule to show cause were not specific as to what type of contempt finding was sought against Aimee. The conduct directed at the Court by Aimee would historically be direct criminal contempt. An action for direct criminal contempt requires a separate cause of action and would have entitled Aimee to the appointment of an attorney. Aimee's conduct could also fall under indirect criminal contempt. Indirect criminal contempt requires not only the filing of a petition or complaint but also personal service of the complaint. The hearing would have been conducted by a different judge and also would have entitled Aimee to a court-appointed attorney.

The Court interprets the petitions for rules to show cause as petitions seeking a finding of indirect civil contempt. Indirect civil contempt may be heard as part of the same proceeding and does not entitle the respondent to a court-appointed attorney. The Court having considered the testimony and credibility of the witnesses, examined the pleadings and exhibits, and applying the applicable law, FINDS that Aimee is in indirect civil contempt as a result of her pleadings which contain libelous and defamatory statements directed toward the Court. The statements were made without any foundation. Aimee's conduct directly and necessarily impacted and delayed the administration of justice, ironically, one of the complaints Aimee had against the Court. The allegations made by Aimee against the judicial system and its judges impugned the impartiality of the judges and served to undermine the public's confidence in the judiciary and the legal system of justice. Aimee did heed the admonishment of the two judges who directed Aimee to be prepared to apologize for her actions at the start of the contested hearing. Aimee stood and apologized (made a statement of allocution) for anything she said that could be considered "offensive". The sincerity of Aimee's apology was questioned by the attorneys who were also the subjects of Aimee's conduct and defamatory statements. However, at least one higher court has held that "(a)n apology . . .implies an admission of past conduct" and can be "construed as a promise not to engage in similar behavior in the future." *In re: Marriage of Samuel and Samuel J. Cohnman, Contemnor/appellant,* 394 Ill.App.3d 398, at 402 Because Aimee did offer an apology, the Court dismisses those portions of the rules to show cause that are based upon Aimee's contemptuous conduct toward the court, judges and judicial system. As a result of Aimee's apology, the Court elects to impose no sanction against Aimee.

## Co-Guardians

A small sampling of Aimee's conduct and false and defamatory allegations against John and Linda is referenced, above, in the Court's analysis of Linda's petition for an order of protection against Aimee. Aimee also filed a police report against John and Linda restating her false and malicious allegations .

Aimee sent copies of the police report to the State's Attorney's Office. Aimee's conduct and allegations required John and Linda to incur substantial attorney's fees and costs in order to properly and legally respond and defend themselves. These attorney's fees would not have been incurred but for Aimee's conduct. The Court considering the totality and egregiousness of Aimee's conduct FINDS that Aimee is in indirect civil contempt. The Court's sanctions are imposed, below.

## Attorneys

The attorneys involved in these proceedings also were subjected to the egregious conduct and defamatory allegations directed against them by Aimee. Aimee falsely accused the attorneys of fraud, being corrupt, conspiring with the court, John and Linda. Aimee filed a police report against the attorneys. Aimee sent copies of documents containing her allegations against the attorneys to the State's Attorney's Office. Aimee threatened to "get back" at the attorneys through sanctions, their insurance, and by filing disciplinary complaints against them. Aimee, in fact, did file disciplinary complaints against each of the attorneys which were promptly dismissed by the Attorney Registration and Disciplinary Commission. Aimee demanded that two of the attorneys' law firm represent her in some of her other court cases. Aimee accused the guardian ad litem of being "in bed with John and Linda", perpetrating "cruel and unusual punishment" on Julie and acting in "bad faith". A statement by Aimee in her pleadings declares "(n)ow it's your turn to suffer".

As referenced, above, before the beginning of the contested hearing, Aimee did verbally apologize for anything considered "offensive". She offered no details. When questioned under oath by each of the attorneys, Aimee could offer no evidence supporting her accusations against the attorneys yet she expressed her continued belief that at least some of her baseless allegations were true.

As a direct result of Aimee's conduct and allegations toward them, each of the attorneys necessarily were required to spend an extraordinary amount of time defending themselves and responding to Aimee's threats and allegations. The time consumed by the attorneys was time that they could otherwise have been devoting to their other clients and law practice. The attorneys had to endure attacks on their professional and personal reputations. The expenditure of the attorney's time would not have been necessary but for Aimee's conduct. The Court considering the totality and egregiousness of Aimee's conduct FINDS that Aimee is in indirect civil contempt. The Court's sanctions are imposed, below.

## Violation of

## Supreme Court Rule 137

John and Linda filed a separate motion for sanctions against Aimee based upon Aimee's violation of Illinois Supreme Court Rule 137. John and Linda argue that Aimee's pleadings were filed to harass, cause unnecessary delay and a needless increase in the cost of litigation. Sanctions available for a violation of Rule 137 include an award of attorney's fees. The Court concludes that even though Aimee's filings can be considered a violation of Rule 137, the violation and sanctions are adequately addressed in the petitions for rule to show cause.

## Violation of Emergency Order of Protection

John and Linda accuse Aimee of violating the emergency order of protection. No one directly asked Aimee if she had violated the order. Aimee acknowledged that she had spoken to Julie by phone but no evidence was presented as to when that telephone conversation occurred. Prior to the contested court hearing, the Court granted John and Linda's motion to deem certain statements admitted and certain documents genuine. However, neither the admitted statements or the documents were introduced at the hearing. Aimee's husband, Dirk, acknowledged during his testimony that after the issuance of the emergency order of protection against Aimee, he had spoken by telephone with Julie and had written to her. In addition, Dirk acknowledged that he had contacted third parties to contact Central Plaza inquiring about Julie. Dirk's sworn testimony contradicted some of the statements deemed admitted and some of the documents deemed genuine. Dirk claims that Aimee did not request and was not aware of his actions until after he had acted.

The emergency order of protection provides, in part, as follows:

"Respondent (Aimee) shall not have any communication with Petitioner (Linda) . . . "

"Respondent must not have ANY . . . non-physical, direct or indirect contact with Petitioner." This also includes contact through others . . . "

"It also forbids oral communication, written communication, . . . telephone and cell phone calls, emails . . . and all other communication with Petitioner."

Linda filed the petition seeking a protective order not only on her own behalf but also on behalf of Julie, as a dependent, high risk adult. As such, even though Linda was the petitioner and even though Aimee was the respondent, the emergency order of protection prohibits Aimee from having any

communication with not only Linda but also the other protected parties named in the order, to-wit: Julie, Jarie (Jay) and John.   Not only is Aimee prohibited from having any communication with the protected parties, so is anyone else on Aimee's behalf.  Dirk's communications with Julie as well as the third parties' communications with Central Plaza  done at the request of Dirk could be  could be considered  violations of the emergency order of protection.

In order for Linda to successfully  establish a violation of the order of protection by Aimee, Linda must prove that Dirk's conduct on behalf of Aimee  was a knowing violation.  Dirk testified that it was his belief that since the emergency order of protection was directed only at Aimee, he was free to  contact Julie.  While there is certainly a question as to whether or not Aimee requested or suggested that Dirk contact Julie, the Court finds that Linda failed to prove that the contact by Dirk and the third party acquaintances of Aimee and Dirk was a knowing violation of the emergency order of protection  by Aimee. At the conclusion of the hearing, the Court did admonish both Aimee and Dirk that indirect contact of Julie by Dirk or third parties on Aimee's behalf is a violation of the protective order.

### Contempt sanctions

A finding of indirect civil contempt can result in the imposition of sanctions on the offender which can include a fine of up to $500.00, and/or  incarceration in the county jail for an indeterminate period of time not to exceed six (6) months and/or  an award of attorney's fees.

The Court addresses its award of attorney's fees, below.

In addition to ordering Aimee to pay attorney's fees, the Court imposes a fine of $500.00.  This fine shall be payable to the Clerk of the Court, Rock Island County, IL.

All court costs and fines imposed against Aimee in these proceedings  shall be paid before Aimee shall be allowed to file any further pleadings in this court file.

### Petitions for Attorney's Fees

Petitions for an award of attorney's fees were presented by Mary Ann Brown and John Patrick Brown on behalf of John and Linda, Bill Breedlove, as Julie's guardian ad litem, and Aaron Dyer, as Julie's court-appointed attorney. Some of the fees were incurred as a result of the co-guardians' filing of their annual account and annual report. Some of the fees were incurred as a result of Linda's filing of a petition for an order of protection. Some of the fees were incurred in responding to Aimee's multiple pleadings including her petition to vacate the guardianship, petition to remove John and Linda as Julie's co-guardians

14

and appoint Aimee or Dirk as successor guardian and Aimee's petition for visitation.  Other fees were incurred as a result of the attorneys being required to appear at court hearings set on Aimee's petitions and motions.  Julie lacks any assets with which to pay any of the attorneys' fees and costs incurred.

John and Linda incurred attorney's fees totaling $19,673.00.  The fees are based on an hourly rate of $280.00 for Mary Ann Brown and $240.00 for John Patrick Brown.

As and for an award of attorney's fees in favor of John and Linda and against Aimee incurred as part of John and Linda's petition for an order of protection, the Court awards attorney's fees in favor of John and Linda and against Aimee in the amount of $3,000.00.  A Judgment is entered in favor of John Jones and Linda Jones and against Aimee Albrecht in the amount of $3,000.00.

As and for an award of attorney's fees in favor of John and Linda and against Aimee incurred as a result of appearing at a hearing on one of Aimee's motions for emergency relief for which Aimee appeared one (1) hour late and for which the relief was denied, the Court awards attorney's fees in favor of John and Linda and against Aimee in the amount of $500.00.  A judgment is entered in favor of John Jones and Linda Jones and against Aimee Albrecht in the amount of $500.00.

As and for sanctions imposed against Aimee as a result of her being found in indirect civil contempt as a result of her conduct and false and malicious filings against John and Linda, the Court awards attorney's fees in favor of John and Linda and against Aimee in the amount of $2,500.00.  A judgment is entered in favor of John Jones and against Linda Jones and against Aimee Albrecht in the amount of $2,500.00.

As and for sanctions imposed against Aimee as a result of her being found in indirect civil contempt as a result of her conduct and false and malicious filings against Mary Ann Brown and John Patrick Brown and their law firm, the Court awards attorney's fees in favor of Mary Ann Brown and John Patrick Brown and their law firm and against Aimee Albrecht in the amount of $2,500.00.

Bill Breedlove's petition for fees incurred as Julie's guardian ad litem seeks a total of $9,100.00 plus transcript costs of $460.00.  The fee request is based on an hourly rate of $250.00 for Mr. Breedlove and $100.00 for Mr. Breedlove's staff.

As and for sanctions imposed against Aimee as a result of her being found in indirect civil contempt as a result of her conduct and false and malicious filings against Bill Breedlove, the Court awards

fees in favor of Bill Breedlove and against Aimee Albrecht in the amount of $2,500.00. A judgment is entered in favor of Bill Breedlove and against Aimee Albrecht in the amount of $2,500.00.

The Court also orders Aimee to pay the sum of $500.00 to Mr. Breedlove for fees incurred as a result of Mr. Breedlove being required to appear at a hearing on one of Aimee's motions for emergency relief for which Aimee appeared one (1) hour late and for which the relief was denied. A judgment is entered in favor of Bill Breedlove and against Aimee Albrecht in the amount of $500.00.

The balance of the guardian ad litem fees and costs shall be paid by John and Linda on behalf of Julie.

Aaron Dyer's petition for attorney's fees incurred as Julie's court-appointed attorney seeks a total of $17,610.00 and is based on an hourly rate of $300.00.

The Court reduces Mr. Dyer's hourly rate to $250.00 and disallows the request for fees for the preparation and presentation of his fee petition.

As and for sanctions imposed against Aimee as a result of her being found in indirect civil contempt as a result of her conduct and false and malicious filings against Aaron Dyer, the Court awards attorney's fees in favor of Aaron Dyer and against Aimee Albrecht in the amount of $2,500.00. A judgment is entered in favor of Aaron Dyer and against Aimee Albrecht in the amount of $2,500.00.

The Court also orders Aimee to pay the sum of $500.00 to Mr. Dyer for fees incurred as a result of Mr. Dyer being required to appear at a hearing on one of Aimee's motions for emergency relief for which Aimee appeared one (1) hour late and for which the relief was denied. A judgment is entered in favor of Aaron Dyer and against Aimee Albrecht in the amount of $500.00.

The balance of Mr. Dyer's attorney's fees (as recalculated at $250.00 an hour) shall be paid by John and Linda on behalf of Julie.

The Court is aware of the financial burden which the payment of fees and attorney fees places upon John and Linda especially since an unconscionable amount of these fees were generated as the direct result of the conduct of Aimee. The Court weighed the financial resources of John and Linda and Aimee. The Court also considered the services that were rendered in these proceedings for the benefit of Julie by both the guardian ad litem and Julie's court-appointed attorney. Neither Mr. Breedlove or Mr. Dyer should be placed in a position of having provided their services without being reasonably compensated.

16

#### Other

Aimee objected to some statements included in the guardian ad litem's reports. After reviewing the guardian ad litem reports, the Court will strike one sentence of the Fourth Supplemental Report of the Guardian ad Litem filed on March 26, 2020, which is in the second paragraph of the report and which reads "These claims mirror the schizophrenic delusions that the ward has about her parents, the guardians."

The Court gave serious thought as to whether or not to seal or strike the egregious, false and malicious statements made by Aimee against the co-guardians, the attorneys, the judges and the judicial system. To do so would effectively seal almost all of the filings made by Aimee in this file. As much as the Court wishes to protect the co-guardians, attorneys, other judges and even herself from the stinging, hurtful, damaging and outrageously untrue and unfounded allegations of Aimee, the transparency of our court proceedings must take precedence. The conduct and statements of Aimee serve more as a reflection on Aimee than on the individuals against who the conduct and statements were made.

#### Miscellaneous

A plenary order of protection is being entered in 20 OP 250 simultaneously with the entry of this Opinion and Order. Attorney JohnPatrick Brown is directed to arrange for service of the plenary order of protection on Aimee.

ENTER:    SEPTEMBER 25, 2020

Linnea E. Thompson, Judge

Copies to:

mabrown@nashbeanford.com
jbrown@nashbeanford.com
william@breedlovelegal.com
aarondverlaw@yahoo.com
aimeealbrecht@gmail.com
aimeealbrecht@yahoo.com

17

**Exhibit G**
Illinois Supreme Court Case No. 131821
Secret Dismissal Issued by the Court



## SUPREME COURT OF ILLINOIS
### SUPREME COURT BUILDING
### 200 East Capitol Avenue
### SPRINGFIELD, ILLINOIS 62701-1721

CYNTHIA A. GRANT
Clerk of the Court

(217) 782-2035
TDD: (217) 524-8132

June 02, 2025

FIRST DISTRICT OFFICE
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 793-1332
TDD: (312) 793-6185

Aimee L. Albrecht
200 W Spring Grove Ave
Alexis, IL 61412

    In re:    Albrecht v. Thompson
               131821

Today the following order was entered in the captioned case:

    Motion by Movant, *pro se*, for a supervisory order. <u>Denied</u>.

    Order entered by the Court.

               Very truly yours,

               Cynthia A. Grant

               Clerk of the Supreme Court

cc:    Aaron Matthew Dyer
       Jeffrey Joseph Neppl
       JohnPatrick Brown
       Hon. Linnea E. Thompson
       William Lester Breedlove



# SUPREME COURT OF ILLINOIS

SUPREME COURT BUILDING
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721

CYNTHIA A. GRANT
Clerk of the Court

(217) 782-2035
TDD: (217) 524-8132

June 18, 2025

FIRST DISTRICT OFFICE
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 783-1332
TDD: (312) 793-6185

Aimee L. Albrecht
200 W Spring Grove Ave
Alexis, IL 61412

In re:   Albrecht v. Thompson
131821

Today the following order was entered in the captioned case:

Motion by Movant, *pro se*, for reconsideration of motion for supervisory order. <u>Denied</u>.

Order entered by the Court.

Very truly yours,

Cynthia A. Grant

Clerk of the Supreme Court

cc:   Aaron Matthew Dyer
Jeffrey Joseph Neppl
JohnPatrick Brown
Hon. Linnea E. Thompson
William Lester Breedlove



## SUPREME COURT OF ILLINOIS

SUPREME COURT BUILDING
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721

CYNTHIA A. GRANT
Clerk of the Court

(217) 782-2035
TDD: (217) 524-8132

June 17, 2025

FIRST DISTRICT OFFICE
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 793-1332
TDD: (312) 793-6185

Aimee L. Albrecht
200 W Spring Grove Ave
Alexis, IL 61412

      In re:    Albrecht v. Thompson
                131821

Today the following order was entered in the captioned case:

      Motion by Movant, *pro se*, for leave to file two (2) thumb drives and supporting evidence in support of motion for reconsideration. <u>Allowed</u>.

      Order entered by Justice Holder White.

                Very truly yours,

                *Cynthia A. Grant*

                Clerk of the Supreme Court

cc:   Aaron Matthew Dyer
      Jeffrey Joseph Neppl
      JohnPatrick Brown
      Hon. Linnea E. Thompson
      William Lester Breedlove

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

AIMEE LYNN ALBRECHT,
    Petitioner,
v.
SHERIFF OF ROCK ISLAND COUNTY, ILLINOIS,
    Respondent.
Case No. _____

PROPOSED ORDER GRANTING WRIT OF HABEAS CORPUS

This matter comes before the Court on the Petition for Writ of Habeas Corpus under 28 U.S.C. §§ 2241–2243. The Court finds that the September 21, 2022 order of protection in 20-OP-250 purports to run "to December 31, 2099," contains no written findings as required by 750 ILCS 60/214(c), was extended without compliance with 750 ILCS 60/220(e), and was not served until September 29, 2022 contrary to 750 ILCS 60/222 and the enforcement condition in 750 ILCS 60/223(d). Written orders control under Illinois Supreme Court Rule 272. The arrest-backed order imposes a non-negligible restraint on physical liberty and satisfies habeas "custody."

IT IS ORDERED:

1. The Petition for Writ of Habeas Corpus is GRANTED.

2. The September 21, 2022 order of protection in 20-OP-250 is DECLARED void and unenforceable for noncompliance with 750 ILCS 60/214(c), 60/220(e), 60/222, 60/223(d), and Rule 272, and for resulting due-process violations.

3. Respondent, and all persons in active concert or participation with Respondent who receive actual notice of this Order, are PERMANENTLY ENJOINED from enforcing or causing enforcement of the September 21, 2022 order, including any warnings, arrests, charges, prosecutions, detentions, or other actions premised on that order.

4. Respondent shall recall or cancel any warnings, notices, dispatch flags, or database entries referencing the September 21, 2022 order and, within ten days, file written confirmation with the Court and provide a copy to Petitioner.

5. Any punitive contempt sanction imposed in the consolidated posture without criminal-contempt safeguards, including the suspended 13-week term described in

the March 22, 2022 order, is VACATED. Any related mittimus or enforcement record shall be EXPUNGED.

6. For avoidance of doubt, 20-OP-250 shall not be treated as consolidated with 16-P-313 for purposes of enforcement or collateral consequences of the dissolved order of protection.

7. The Clerk shall enter judgment and close the case.

Dated: _____, 2025

_____

United States District Judge

JS 44   (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Aimee Lynn Albrecht, Pro Se
200 W. Spring Grove Av. Alexis IL 61412

**(b)** County of Residence of First Listed Plaintiff · *Warren*
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

Sheriff of Rock Island County
1317 Third Av. Rock Island Illinois, 61201

County of Residence of First Listed Defendant *Rock Island*
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☒  Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                               *and One Box for Defendant)*

|                                          | PTF | DEF |                                                               | PTF | DEF |
|------------------------------------------|-----|-----|---------------------------------------------------------------|-----|-----|
| Citizen of This State                    | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State    | ☐ 4 | ☐ 4 |
| Citizen of Another State                 | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country  | ☐ 3 | ☐ 3 | Foreign Nation                                                | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|--|--------------------|------------|----------------|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☒ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from Another District *(specify)*

☐ 6  Multidistrict Litigation - Transfer

☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Harris v. Nelson

Brief description of cause:
Habeas Corpus  Protection Order expire Dec 31, 2099

## VII. REQUESTED IN COMPLAINT:

☐  CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE   Rock Island County Circuit Court  2016-P-313
DOCKET NUMBER  2020-OP-250

DATE  9-18-2025

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____